AO 106 (Rev. 04/10) Application for a Search Warrant

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

AUG 15 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. MJ18-371
Two cellular phones recovered from Edward Locke )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Two cellular phones recovered from Edward Locke, as further described in Attachment A, attached hereto and incorporated herein by reference, currently in the custody of DEA Seattle

located in the _____Western_____ District of _____Washington_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, List of Items to be Seized, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute/Possess with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 841 | Distribution/ Possession of Controlled Substances with Intent to Distribute |
| 21 U.S.C. § 843(b) | Use of Communications Facility in Furtherance of a Felony Drug Offense |

The application is based on these facts:

See Affidavit of Terris Farabee, DEA Special Agent, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Terris Farabee, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 15 August 2018

_____
*Judge's signature*

City and state: Seattle, Washington

James P. Donohue, United States Magistrate Judge
*Printed name and title*

Attachment A

Property to Be Searched

The property to be searched comprises the following cellular telephones currently in the possession of the Drug Enforcement Administration:

a. **DEA Exhibit N-2400:** a gray SM-J327P Samsung cellular phone. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

b. **DEA Exhibit N-2401:** a black Samsung cellular phone. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

Attachment A - 1

Attachment B

Items to be Searched for and Seized

This warrant authorizes the seizure of the following items or materials that may contain evidence of the commission of, the fruits of, and/or property which has been used as the means of committing the following crimes: Distribution of, and possession with intent to distribute, controlled substances, in violation of 21 U.S.C. § 841(a)(1); conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841 and 846; and, use of a communications facility in furtherance of a felony drug offense, in violation of 21 U.S.C. § 843(b):

- Assigned numbers and identifying telephone serial numbers (ESN, MIN, IMSI, or IMEI);
- Stored lists of recent received, sent, or missed calls;
- Stored contact information;
- Stored photographs related to the aforementioned crimes, including of narcotics, currency, evidence of suspected criminal activity, and/or the user of the phone and/or suspected co-conspirators, including any metadata (such as date and time of photograph, and embedded GPS data) associated with these photographs; and
- Stored text messages (including any attached digital files associated therewith) related to the aforementioned crimes of investigation or that may show the user of the phone and/or co-conspirators, including Apple iMessages, Blackberry Messenger messages, "WhatsApp" messages, or other similar messaging services where the data is stored on the telephone.

The search warrant authorizes imaging or otherwise copying all data contained on the subject devices. The search warrant also authorizes reasonable efforts to overcome any passcode protection of the subject devices.

Attachment B - 1

# AFFIDAVIT

State of Washington  )
                     )
County of King       )

Terris Farabee, being first duly sworn on oath, deposes and says:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Drug Enforcement Administration, and have been so employed since June 2004. I have a Bachelor of Arts degree in Criminal Justice, attended the West Virginia State Police Academy, and was employed as a police officer with the City of Wheeling, West Virginia from 1996 to 2004. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). In that capacity, I investigate violations of the Controlled Substances Act, Title 21, United States Code, Section 841, et seq.

2. I am currently assigned to the Seattle Field Division. I have completed sixteen (16) weeks of DEA Basic Agent training at the DEA Academy in Quantico, Virginia. I have received training in law enforcement and investigation of the Controlled Substances Act. I have participated in narcotics investigations, service of search warrants, arrests, and seizures relating to the manufacture, distribution, and transportation of the controlled substances and offenses related to controlled substances violations such as money laundering, which have resulted in the arrest of individuals and the seizure of illicit narcotics and/or related evidence and the forfeiture of narcotics-related assets. I have participated in debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. I have encountered and have become familiar with various tools, methods, trends, paraphernalia, and related articles used by various traffickers in their efforts to import, conceal, and distribute controlled substances. I am also familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their

unlawful operations, and how they code their conversations to disguise their unlawful activities.

3. I was trained in undercover drug investigations for the purpose of safely conducting undercover operations and the procedures for the collection of evidence in an undercover investigation. I have participated in investigations involving organizations trafficking in controlled substances, including marijuana, cocaine, heroin, MDMA and methamphetamine, which have resulted in arrests of drug traffickers and seizures of controlled substances and currency. I have been involved in multiple long term investigations that have utilized wiretaps as part of the investigation. Those previous Title III investigations have resulted in multiple federal indictments and arrests.

## PURPOSE OF AFFIDAVIT

4. This affidavit is submitted for the limited purpose of establishing probable cause to search the following cellular telephones seized from Edward Locke at the time of his arrest on June 6, 2018:

   a. **DEA Exhibit N-2400:** a gray SM-J327P Samsung cellular phone. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

   b. **DEA Exhibit N-2401:** a black Samsung cellular phone. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

5. Based on information described herein, I believe the cellular phones marked as **DEA Exhibits N-2400 and N-2401** were being used by Locke to communicate with other drug traffickers and/or drug customers in order to facilitate the distribution of drugs in Washington, in violation of Title 21, United States Code, Sections 841, 843(b), and 846.

6. Since this affidavit is being submitted for the limited purpose of securing authorization for a search warrant of the above described cellular telephones, I have not included every fact known concerning this investigation. I have set forth only the facts that I believe are necessary in light of the limited purpose of this application.

## SUMMARY OF PROBABLE CAUSE
### Authorization of Wire and Electronic Communication

7. On September 6, 2017, the Honorable James L. Robart, United States District Judge for the Western District of Washington, signed an Order authorizing interception of wire and electronic communications of (206) 890-5711 ("TT1") used by Michael Morgan and (206) 474-8971 ("TT4") used by Joseph Wilson. In doing so, Judge Robart found probable cause to believe that TT1 and TT4 were being used to further drug trafficking and related offenses. Interception pursuant to that order strengthened investigators' beliefs that Morgan, Wilson, and their associates were distributing narcotics in the Western Washington area. Interception ceased on or about October 5, 2017.

8. On November 3, 2017, the Honorable James L. Robart, United States District Judge for the Western District of Washington, signed an Order authorizing interception of wire and electronic communications for (206) 557-2885 ("TT12") used by Crystal Barquet, (253) 224-9829 ("TT15") used by Charles Cheatham, (850) 361-7470 ("TT17") used by Danavian Hunter, (206) 330-4359 ("TT18") used by Edward Locke, (206) 972-8851 ("TT19") used by Anthony Dao, and (253) 254-2227 ("TT21") used by Calvin Thomas. Interception of TT12 and TT19 ceased on November 16, 2017. Interception of TT15 and TT18 ceased on December 2, 2017. Interception of TT21 ceased on December 3, 2017. Interception of TT17 ceased on December 6, 2017.

9. On February 12, 2018, the Honorable James L. Robart, United States District Judge for the Western District of Washington, signed an Order authorizing interception of wire and electronic communications for (206) 501-5395 ("TT3") used by Johnny Davis, (850) 361-7470 ("TT17") used by Danavian Hunter, (206) 618-7657 ("TT40") used by Michael Morgan, (425) 529-7868 ("TT6") used by Railen Wheeler, (206) 619-2805 ("TT41") used by Railen Wheeler, (323) 408-4784 ("TT24") used by Michael Davis, and (213) 833-8533 ("TT46") used by Charles Cheatham. In doing so, Judge Robart found probable cause to believe that the listed target telephones were being used to further drug trafficking and related offenses. Interception pursuant to that order began on February 13,

1  2018, and ceased on March 14, 2018. This further strengthened investigators' beliefs that
2  the users of those phones, and their associates, were distributing narcotics in the Western
3  Washington area.
4      10.   In this Affidavit, I discuss telephone calls and text messages that were
5  intercepted pursuant to the Orders identified above. I know through training and
6  experience, including experience with this investigation, that individuals involved in the
7  distribution of controlled substances and other criminal activity often use coded words and
8  inferences when referring to their illegal activity. I have used this training and experience,
9  as well as the training and experience of other law enforcement officers familiar with this
10 investigation, to substitute what I believe to be an accurate translation for these coded
11 words and inferences, which are included in parentheses in this affidavit. The following
12 summaries are based on my review of intercepted communications, and my discussions
13 with other law enforcement officers familiar with this investigation who have reviewed the
14 intercepted communications. The paragraphs herein include the summaries of pertinent
15 portions of intercepted calls, and are not necessarily the entire conversations between the
16 parties involved.

**September 12, 2017:  Morgan and Locke discussed owed drug proceeds**

17
18     11.   On September 12, 2017, Michael Morgan using TT1 called TT18 (session
19 473). Based on the evidence described further below, law enforcement believes that Locke
20 used TT18. On the call, Morgan greeted Locke and made small talk. After about thirty
21 seconds of conversation, Morgan asked, "What's going on man?" Locke said he wanted
22 "to get at" Morgan but Morgan's phone was "going straight to voicemail for a while."
23 Morgan said he probably had the phone off. Locke said that he "finally got over the little
24 hump" and so now he was "pushing" (had trouble selling drugs in his possession and was
25 now selling the drugs). Locke told Morgan he "wanted to get it together" and "straighten
26 you" (Morgan) "out." Morgan asked, "When you trying to do that?" Locke said, "I can do
27 like shoot you two two two two, or I can just wait and … five … five. Or however you
28 want to do." Morgan responded, "Whatever works for you brother." Both started laughing

AFFIDAVIT OF Terris Farabee- 4

and Locke responded, "No pressure ok? That's what I'm talking about baby." Locke said, "Monday or something." Morgan abruptly changed the subject and the two continued to have small talk for another ten minutes.

12. Based upon my training and experience, I believe Morgan called Locke to collect drug proceeds. I believe that Locke indicated that he was attempting to gather the owed proceeds, and could pay Morgan in small installments as soon as Monday.

### September 2017: Surveillance of 206-330-4359 (TT18)

13. On September 21, 2017, GPS data for TT18 indicated that the phone was in the vicinity of Uncle Thurms Finger Lickin Ribs and Chicken in Tacoma. At that location, investigators located a black Dodge Durango (British Columbia FN508A) in the lot. Investigators saw Edward Locke (identified by his driver's license photograph) get out of the Durango and move boxes between the business and the Durango. Locke then departed in the Durango. GPS data showed that TT18 traveled to the Tacoma Mall. There investigators located the Durango. Investigators saw Locke come out of the mall and return to the Durango.

14. Later GPS data indicated that TT18 was in the vicinity of Freddie's Casino in Renton. There, investigators again located the Durango. Investigators saw Edward Locke and Deon Locke (identified from his driver's license photograph) come from the casino and walk to the Durango. Edward Locke got into the driver's seat and Deon Locke got into the passenger seat. They departed in the Durango. GPS data for TT18 indicated that the phone departed the area as well.

15. Later that evening, GPS data for TT18 indicated that the phone was in the vicinity of 3508 Norton Avenue, Everett, Washington. Investigators went to that location and located the Durango parked in the driveway.

16. On September 25, 2017, GPS data indicated that TT18 was in the vicinity of the Norton Avenue residence. There investigators located the Durango. The Durango departed the residence and investigators followed it to the Northgate Mall in Seattle. The Durango parked at the north end of the mall. Edward Locke got out of the driver's seat and

walked into the Bed Bath and Beyond. There were no other occupants in the Durango. GPS data also showed that TT18 was at the mall.

### November 2017:  Cocaine Distribution by Locke

17. On November 6, 2017, TT18 received a call from an unknown male (UM4906) using 425-330-4906 (session 562). UM4906 asked, "You still got powder?" (cocaine). Locke said, "Yeah." UM4906 asked, "Can you come by Great American?" "I just was like fifty" ($50 worth) "Are you going to give me a good deal?" Locke said, "Yeah." "Give me about forty five minutes because I'm eating."

18. A little over an hour later, TT18 sent a text message to 425-330-4906 (session 595) reading, "I'm getting off the exit." Several minutes later, TT18 received a reply, "I'm outside great American" (session 596). Investigators arrived at the Great American Casino in Everett and saw Locke and another person standing outside the black Dodge Durango (British Columbia FN508A). Shortly thereafter, the person Locke met with walked away, and Locke left in the Durango. Based upon these observations, I believe that Locke conducted a cocaine transaction with this subject.

### November 2017:  Locke at 8510 10th Avenue West, Everett, Washington

19. On November 12, 2017, Locke, using TT18, called an unknown female (UF6524) using 604-817-6524. Locke asked, "Hey babe, what's my apartment number?" UF6524 said, "B213." Locke asked, "What's the address?" UF6524 said, "8510 10th Avenue West."

20. On November 28, 2017, investigators located the black Dodge Durango (British Columbia FN508A) parked in front of building B of the Nova North Apartments at 8510 10th Avenue West, in Everett. Investigators saw Locke come out of Building B and get into the Durango. The Durango departed. More than two hours later, the Durango returned.

### February 21, 2018:  Locke Contacts Johnny Davis Looking for Michael Morgan

21. During the evening hours, Johnny Davis received a call from Locke using TT18. During their conversation, Locke said, "Hey, if you talk to dog, tell him to call me."

Johnny Davis said, "Say what?" Locke said, "If you talk to Dose" (Morgan) "tell him to call me man. That tramp ain't answering the phone." Johnny Davis said, "He just left here today." Davis continued:

> "I told him I was going to give him five racks" ($5,000) "but I only had three." He "got mad and left the three" ($3,000). "He needs his paper. I'm just trying to give it to him as fast as I can." "But shit ain't happening like how I want it to. So you know, he's mad right now." "I gotta stay down and keep getting' my money right till I pay" him "off." "When I could be back in his motha fucka good graces again." "I can't burn the only bridge that I'm fucking crossing."

22. Based upon my training and experience, I believe Davis attempted to pay Morgan a portion of owed drug proceeds. When Davis did not have the amount of money Morgan expected, Morgan left without taking any money. Davis later complained to Locke about his situation with Morgan.

### May 2018: Surveillance at 8510 10th Avenue West Apartment B213

23. On May 3, 2018, investigators went to 8510 10th Avenue West and observed the black Dodge Durango (British Columbia FN508A) parked on 10th Avenue West just north of the building B. Investigators recognized the Durango, but now it had British Columbia license FN508A. The registered owner was the same registered owner as when the Durango had British Columbia license DW362B (Windy Merkel). Investigators saw Locke come from building B and depart in the Durango. Locke later returned and parked in the parking lot of the B building. Investigators followed Locke into the building and saw Locke use a key to enter Apartment B213.

### Locke indicted by a Federal Grand Jury

24. On May 30, 2018, Edward Locke was indicted by a Federal Grand Jury for conspiracy to distribute controlled substances, distribution of cocaine, and possession of Oxycodone with intend to distribute. A federal arrest warrant was issued for Locke the following day.

AFFIDAVIT OF Terris Farabee- 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Execution of Federal Search Warrant at 8510 10th Avenue West, Apartment B213, Everett, Washington and the Arrest of Locke**

25. On June 6, 2018, at approximately 5:00 am, investigators executed a federal search warrant at the residence of Locke, located at 8510 10th Avenue West, Apartment B213, Everett, Washington. All investigators were wearing clearly visible "police" markings. Upon walking up to the residence, SA Chin, SA Hussey, and Marysville PD K-9 Office Smith received notice that Locke was walking out to his black Dodge Durango with British Columbia license plate FN508A.[1] SA Chin, SA Hussey, and Officer Smith arrested Locke without incident in the apartment parking lot. At the time of his arrest, Locke was in possession of a black bag, two cellular phones (identified as **DEA Exhibits N-2400 and N-2401**), $689.00 US currency, and a loaded Glock 42 pistol which was later determined to be stolen. The black bag was found to further contain a white powdery substance suspected to be cocaine, unknown blue pills, and unknown white pills.

26. At the same time Locke was arrested in the parking lot, investigators announced their presence and purpose at the apartment unit. Investigators entered and secured the apartment without incident. After the rooms were labeled and photographs were taken, investigators conducted a thorough and systematic search of the apartment.

27. Investigators seized the following evidence from within the apartment: additional unknown blue pills, one green plate, one drug scale, and one blade each with suspected cocaine residue, a Beretta 950 with one magazine containing six rounds of .25 caliber ammunition, PMC ammunition box containing 43 .25 caliber rounds of ammunition, one Glock magazine containing one 9mm round of ammunition, $1,174.00 US currency, and one black Z970 ZTE cellular phone.[2]

---

[1] It should be noted that Locke coincidentally exited a back door of the apartment at the same time investigators arrived and was not attempting to flee the scene.

[2] Authority to search the black Z970 ZTE cellular phone was authorized in the search warrant for 8510 10th Avenue West, Apartment B213, Everett, Washington.

AFFIDAVIT OF Terris Farabee- 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

28. After completing the search, investigators left a copy of the search warrant and items seized in the living room of the apartment. A maintenance worker for the apartment complex arrived to secure the door of the apartment.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

29. Based upon my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

    a. Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization. Traffickers commonly maintain this information in their cellular telephones. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing drug trafficking. Traffickers often change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

    b. Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences and vehicles. This evidence often includes not only contraband and paraphernalia, but also financial records, records of property and vehicle ownership, records of property rented, and other documentary evidence relating to their crimes. Drug traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product. These individuals often maintain these photographs and recordings in their possession, on their cellular phones, or at their premises.

    c. Traffickers frequently maintain records, books, notes, ledgers, travel documents, and cellular phones relating to the transportation and distribution of controlled substances in locations convenient to them, such as their residences and vehicles.

    d. Traffickers frequently keep on hand amounts of United States currency in order to maintain and finance their ongoing narcotics business. They commonly deal in currency because of its untraceable nature. They sometimes convert their illicit currency into currency equivalents such as cashier's checks and money orders. Traffickers

often conceal in secure locations such as their residences and vehicles currency, financial instruments, precious metals, jewelry, and other items of value which are the proceeds of drug transactions and evidence of consequential financial transactions, relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities, and financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, and other records showing the management of such assets. Traffickers often have money counters.

   e. Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale and, similarly, such drug traffickers will have an "inventory" which will fluctuate in size depending upon various factors to include the demand and supply for the product. I would expect the trafficker to keep records of his illegal activities for a period of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code.

   30. As noted above, drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and

experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

    a. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

    b. The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

    c. Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

    d. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends,

family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs.

e. Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

//

## CONCLUSION

31. Based upon the information discussed above, and on the experience and knowledge of other agents and officers involved in this investigation, I respectfully submit there is probable cause to believe **DEA Exhibits N-2400 and N-2401** were being used to facilitate violation of the federal controlled substance laws and related offenses in the Western District of Washington.

_____
Terris Farabee, Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN before me this __15th__ day of August, 2018.

_____
The Honorable James P. Donohue
United States Magistrate Judge

AFFIDAVIT OF Terris Farabee- 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970